UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JANET A. HERNANDEZ, ) | |
| ) | |
| Plaintiff, ) | Case No. CV10-3142 AJW |
| ) | |
| v. ) | MEMORANDUM OF DECISION |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for Supplemental Security Income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural history of this case, which is summarized in the Joint Stipulation. [See JS 2]. In a written hearing decision that constitutes the final decision of the Commissioner, an administrative law judge ("ALJ") found that plaintiff had severe impairments consisting of status post operative adhesive capsulitis of the shoulders bilaterally, status post operative bilateral carpal tunnel syndrome, cervical sprain/strain, and lumbar sprain/strain. [JS 2; Administrative Record ("AR") 19]. The ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform light work that allowed

her to alter positions for one to two minutes every hour, involved occasional fine and gross manipulation with the hands bilaterally, and did not require work at or above shoulder level. [AR 20]. The ALJ concluded that plaintiff was not disabled because her RFC did not preclude her from performing work available in significant numbers in the national economy. [See JS 2; AR 23-24].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Vocational expert's testimony**

Plaintiff does not challenge the ALJ's RFC assessment or the manner in which he framed his hypothetical question. Plaintiff contends, however, that the ALJ erred in relying on the testimony of the vocational expert ("VE") in response to the ALJ's hypothetical question incorporating the limitations in plaintiff's RFC. Plaintiff contends that the VE's testimony conflicts with presumptively reliable information in the Dictionary of Occupational Titles ("DOT") and its companion publication, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"). Plaintiff argues that the VE failed adequately to explain that deviation, and that the ALJ failed to acknowledge or reconcile the conflict in his decision. [See JS 4-15].

The Commissioner relies primarily on the DOT for "information about the requirements of work in the national economy." Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007) (quoting Social Security

Ruling ("SSR") 00-4p, 200 WL 1898704, at *2)). There is a rebuttable presumption that the information in the DOT and its supplementary Selected Characteristics is controlling. Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986); accord, Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). The Commissioner "also uses testimony from vocational experts to obtain occupational evidence." Massachi, 486 F.3d at 1153.

"Where the testimony of a VE is used at Step Five, the VE must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy." Osenbrock v. Apfel, 240 F.3d 1157, 1162-1163 (9th Cir. 2001). An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether that testimony conflicts with the DOT. Massachi, 486 F.3d at 1152. Neither the DOT nor the VE's testimony "automatically trumps when there is a conflict." Massachi, 486 F.3d at 1153 (footnote omitted). The ALJ must obtain an explanation from the VE for any conflict and must then determine whether the explanation is reasonable, and whether a basis exists for relying on the expert rather than the DOT. Massachi, 486 F.3d at 1153; see Johnson, 60 F.3d at 1428 (stating that an ALJ may rely on expert testimony which contradicts the DOT "only insofar as the record contains persuasive evidence to support the deviation").

The ALJ asked the VE to assume the existence of a hypothetical individual matching plaintiff's age, education, and work experience who is limited to light work but "[n]eeds to take a few minutes every hour, a minute or two to make a brief body adjustment," can perform "occasional gripping, typing, grasping, bending," and is "precluded from work at or above shoulder level." [AR 444]. The VE testified that such an individual could not perform plaintiff's past relevant work, but was not precluded from performing the jobs of storage facility clerk, DOT occupational code number 295.367-026; cashier II, DOT occupational code number 211.462-010; and usher, DOT occupational code number 344.677–014. The VE explained that the number of cashier II jobs that the hypothetical person could perform would be eroded by 90% due to the "upper-extremity limitations," but that with the 90% erosion, approximately 4,000 jobs would remain locally and 150,000 available nationally. [AR 444-445]. Asked whether the information she provided was consistent with the DOT and the SCO, "unless otherwise stated," the VE answered, "Yes." [AR 446].

The ALJ relied on the VE's testimony to find that plaintiff could perform alternative jobs available in significant numbers in the national economy. [AR 24].

1  Plaintiff contends that the ALJ did not acknowledge or reconcile apparent conflicts between the
2 occupational definitions in the DOT and SCO of the jobs of storage facility clerk, cashier II, and usher and
3 the VE's testimony that a person with plaintiff's RFC could perform those jobs.

**Storage facility clerk**

According to the DOT, the "Physical Demands" of the job of storage facility clerk include frequent "reaching" and frequent "handling." [JS, Ex. 2]. In this context, reaching means "extending the hands and arms in any direction," and handling means "seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands." [JS 6 (citing Revised Handbook for Analyzing Jobs)]. See SSR 85-15, 1985 WL 56857, at *7 (same). "Frequent" means occurring from one-third to two-thirds of the time, or up to almost six hours in an eight-hour work day. SSR 83-10, 1983 WL 31251, at *6.

> Reaching, handling, fingering, and feeling require progressively finer usage of the upper extremities to perform work-related activities. Reaching . . . and handling . . . are activities required in almost all jobs. Significant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do. Varying degrees of limitations would have different effects, and the assistance of a VS may be needed to determine the effects of the limitations.

SSR 85-15, 1985 WL 56857, at *7.

The ALJ's hypothetical question posited an individual who "is precluded from work at or above the shoulder level," which translates to a preclusion against reaching or handling at or above shoulder level. In addition, the hypothetical person was limited to "occasional" fine and gross manipulation, which translates to a limitation to occasional handling. The job of storage facility clerk as defined by the DOT requires frequent reaching, which means the ability to reach frequently in all directions, including shoulder level or above. That job also demands frequent handling. Thus, an apparent conflict exists between the DOT occupational definition of a storage facility clerk and the VE's testimony. That conflict was not acknowledged or reconciled by the VE during her testimony, or by the ALJ in his decision. Under Massachi, that omission was error.

///
///

4

**Cashier II**

The DOT job of cashier II also requires frequent reaching and frequent handling. [See JS, Ex. 1]. The VE testified that, due to "upper extremity limitations," the number of available jobs "would be eroded by approximately . . . 90 percent to the kinds of cashiering jobs, such, for example, at [sic] a parking lot where you're just handling change and tickets." [AR 445]. Plaintiff contends that the VE's assertion that a parking lot cashier would not have to perform reaching at or above shoulder level or frequent handling is mere "ipse dixit" and does not rise to the level of "persuasive evidence to support the deviation." Johnson, 60 F.3d at 1428; see Massachi, 486 F.3d at 1153 (stating that the requirement that an ALJ ask about, and "obtain a reasonable explanation for," possible conflicts between a VE's testimony and the DOT was Johnson's holding).

Plaintiff's contention has merit. The VE must identify specific jobs within a claimant's RFC. Osenbrock, 240 F.3d at 1162-1163. The VE identified only one specific "cashier II" job within plaintiff's RFC, that of a parking lot cashier. The DOT's occupational definition for "cashier II" contains a description of specific tasks that are required in that occupation, along with additional "duties required of workers in this occupation in some establishments but not in others." DOT, Parts of the Occupational Definition (4th ed. rev. 1991)[1]. The occupational definition explains that the occupation designed in the DOT as cashier II "[m]ay be designated according the nature of establishment as Cafeteria Cashier (hotel & rest.); Cashier, Parking Lot (automotive ser.) . . . ." DOT, Parts of the Occupational Definition (4th ed.

---

[1] The occupational definition for Cashier II states, in pertinent part:

> Receives cash from customers or employees in payment for goods or services and records amounts received: Recomputes or computes bill, itemized lists, and tickets showing amount due, using adding machine or cash register. Makes change, cashes checks, and issues receipts or tickets to customers. Records amounts received and prepares reports of transactions. Reads and records totals shown on cash register tape and verifies against cash on hand. May be required to know value and features of items for which money is received. May give cash refunds or issue credit memorandums to customers for returned merchandise. May operate ticket-dispensing machine. May operate cash register with peripheral electronic data processing equipment by passing individual price coded items across electronic scanner to record price, compile printed list, and display cost of customer purchase, tax, and rebates on monitor screen. May sell candy, cigarettes, gum, and gift certificates, and issue trading stamps.

5

1  rev. 1991). In other words, the DOT indicates that a parking lot cashier is simply another name for a cashier
2  II job as defined by the DOT (that is, one that requires frequent reaching and handling). Nothing in the DOT
3  occupational definition suggests that the job of parking lot cashier is less physically demanding with respect
4  to reaching and handling than cashier II jobs as a whole. See Prochaska v. Barnhart, 454 F.3d 731, 736 (7th
5  Cir. 2006) (holding that "there is an unresolved potential inconsistency in the evidence that should have
6  been resolved" where the ALJ, relying on a VE's testimony, found that the claimant who could only
7  occasionally reach above shoulder level could perform the job of cashier, which, "under the DOT, [requires]
8  'reaching' frequently," and it was not clear whether the DOT's requirements for that job "include reaching
9  above shoulder level") (cited with approval in Massachi).
10           In Massachi, the Ninth Circuit cited the following examples of reasonable explanations for a VE's
11  deviation from the DOT: (1) the DOT does not provide information about *all* occupations; (2) information
12  about a particular job not listed in the DOT may be available elsewhere; and (3) the general descriptions
13  in the DOT may not apply to specific situations. Massachi, 486 F.3d at 1153 n.17 (citing SSR 00-4p, at *2-
14  *3); see Johnson, 60 F.3d at 1428 & n.7 (stating that "persuasive evidence" supporting deviation from the
15  DOT includes expert testimony that a particular subcategory of job not described in the DOT exists in the
16  local job market).
17           On the present record, those examples are inapposite. The DOT provides information about the job
18  of a "cashier II"; a parking lot cashier is listed in the DOT as an example of a "cashier II" job by another
19  name; and the VE offered no reasonable explanation why the occupational definition of "cashier II" does
20  not apply to the job of parking lot cashier, or, if it does apply, is not actually inconsistent with plaintiff's
21  RFC. Accordingly, the ALJ's reliance on the VE's testimony was error. See Craft v. Astrue, 539 F.3d 668,
22  681 (7th Cir. 2008) (reversing where the VE testified that her testimony did not conflict with the DOT, but
23  also "volunteered that the hypothetical's requirements . . . would preclude some, but not all, of the job titles
24  she had identified," and remanding with instructions that the ALJ "further explore any potential conflicts
25  between the VE's testimony and the DOT to ensure that the jobs' requirements are consistent with [the
26  claimant's] abilities").
27           **Usher**
28           Unlike the jobs of storage facility clerk and cashier II, the DOT states that the job of usher requires

occasional, rather than frequent, reaching and occasional handling. This difference, however, does not resolve the apparent conflict between the VE's testimony and the DOT. Occasional reaching and handling are within plaintiff's RFC *only if* she is not required to perform any such work at or above shoulder level. Since the DOT's definition of reaching contemplates reaching in all directions, an unresolved apparent conflict exists between the DOT and the VE's testimony that the hypothetical person can perform the job of usher.

**Remedy**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa, 367 F.3d at 886 (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)).

It may be that the apparent conflicts between the DOT and the VE's testimony are not actual conflicts, or that any conflict may be satisfactorily resolved. The VE may have failed adequately to articulate the evidentiary basis for her testimony. For example, her expert knowledge may permit her to demonstrate that, notwithstanding the definition of "reaching" as used in the DOT, the DOT occupational definitions for some or all of the jobs she identified do not require the ability to reach at or above shoulder level. Alternatively, she may have expert knowledge of a subcategory of less demanding parking lot cashier jobs that exists in the local market. However, her mere assertion that the hypothetical person could perform jobs that appear to exceed her RFC based on information in the DOT does not amount to "persuasive evidence" or "a reasonable explanation" that trumps the DOT.

On remand, the ALJ may be able to elicit VE testimony demonstrating either that plaintiff's inability to perform work at or above shoulder level and her limitation to occasional manipulative activities are not actually inconsistent with the occupational definitions of the jobs the ALJ identified in his decision, or that some other reasoned basis exists for reconciling the apparent conflict. Accordingly, a remand for further administrative proceedings is appropriate. See Massachi, 486 F.3d at 1153-1154 & n.19 (vacating in part

7

with instructions to remand where "we have an apparent conflict with no basis for the vocational expert's deviation," and therefore the court "cannot determine whether the ALJ properly relied on [the VE's] testimony" at step five); Prochaska, 454 F.3d at 736 (reversing and remanding to permit the ALJ to resolve a "potential inconsistency" between the VE's testimony and the DOT where the claimant could not reach above shoulder level, and therefore it was not clear whether she could perform the job of cashier as defined by the DOT).[2]

**Conclusion**

The Commissioner's decision is not supported by substantial evidence and does not reflect application of the proper legal standards. Accordingly, the Commissioner's decision is reversed, and the case remanded for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

January 21, 2011

_____
ANDREW J. WISTRICH
United States Magistrate Judge

---

[2] This remand is for the limited purpose of allowing the ALJ to augment and clarify the evidence supporting his step five analysis and make appropriate findings. The ALJ may not revisit or revise his findings at steps one through four.